UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CHRISTOPHER CAMAC, TONI LYNN CAMAC,
both individually and on behalf of their son,
C.T.C., an infant under 17 years of age,

                              **MEMORANDUM & ORDER**
                Plaintiffs,             09-CV-5309 (MKB)

              v.

THE LONG BEACH CITY SCHOOL DISTRICT,
DR. ROBERT GREENBERG, individually and
in his official capacity, AUDREY
GOROPEUSCHECK, individually and in her
official capacity, and AMA DARKEH, individually
and in her official capacity,

                  Defendants.

----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Christopher Camac, Toni Lynn Camac, and their infant son C.T.C. filed the above-captioned action against Defendants the Long Beach City School District, Dr. Robert Greenberg, Audrey Goropeuscheck, and Ama Darkeh, alleging violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983.  Plaintiffs also assert violations of their rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, various articles of the New York State Constitution, and New York State Human Rights Law, Executive Law § 290, *et seq.*  In the Complaint, Plaintiffs alleged that Defendants called 911 and falsely reported that C.T.C. had threatened to commit suicide at school, and, as a result, C.T.C. was taken by the police and paramedics to Nassau University Medical Center ("NUMC") and held at NUMC for 14 days.  Defendants moved to dismiss the Complaint, and in July 2011, United States District Judge

Denis R. Hurley[1] granted in part and denied in part Defendants' motion to dismiss. On January 19, 2012, United States Magistrate Judge Gary R. Brown held an initial conference with the parties and set a date for a settlement conference. Prior to the settlement conference, the parties informed Magistrate Judge Brown that they had settled the matter, and the settlement conference was converted into an infant compromise hearing. The infant compromise hearing was held on June 5, 2012. On July 25, 2012, Magistrate Judge Brown filed a report and recommendation (the "Report & Recommendation"), recommending that this Court reject the infant compromise. Defendants timely filed objections to the Report & Recommendation. For the reasons set forth below, the Report & Recommendation is adopted in its entirety. The parties' request to have this Court approve the infant compromise is denied.

## I. Discussion

The Court assumes familiarity with the background of this case, which is set forth in detail in Judge Hurley's 2011 decision and Magistrate Judge Brown's 2012 decision. *See Camac v. Long Beach City Sch. Dist.*, No. 09-CV-5309, 2012 WL 3277228, at *1–4 (E.D.N.Y. July 25, 2012); *Camac v. Long Beach City Sch. Dist.*, No. 09-CV-5309, 2011 WL 3030345, at *1–4 (E.D.N.Y. July 22, 2011).

### a. Standard of Review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also Larocco v. Jackson*, No. 10-

---

[1] The case was reassigned to the undersigned on March 23, 2012.

CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. 28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2.

### b. Objections to the Report & Recommendation

Defendants object to Magistrate Judge Brown's recommendation that the request for approval of the infant compromise be denied. (Def. Obj. Mem. 3–8.)

#### i. Infant Compromise Standard

Under Rule 83.2(a)(1) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, "[a]n action by or on behalf of an infant or incompetent shall not be settled or compromised, or voluntarily discontinued, dismissed or terminated, without leave of the Court embodied in an order, judgment or decree." A district court has discretion to accept or reject an infant compromise. *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 89 (2d Cir. 2010); *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999). "In determining whether the settlement should be approved, the Court's role is to 'exercise the most jealous care that no injustice be done' to the infant." *Allen v. Robert's Am. Gourmet Food, Inc.*, No. 07-CV-2661, 2009 WL 2951980, at *9 (E.D.N.Y. Sept. 8, 2009) (quoting *Southerland v. City of New York*, No. 99-CV-3329, 2006 WL 2224432, at *2 (E.D.N.Y. Aug. 2, 2006)); *see also Anderson v. Sam Airlines*, No. 94-CV-1935, 1997 WL 1179955, at *8 (E.D.N.Y. Apr. 25, 1997) (discussing the court's role in deciding whether to accept or reject infant compromises).

"In exercising its discretion, the district court's focus is to 'determin[e] whether a proposed settlement is fair, reasonable, and adequate,' by comparing 'the terms of the

3

compromise with the likely rewards of litigation.'" *Neilson*, 199 F.3d at 654 (alterations in original) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)); *see also S.W. v. City of New York*, No. 09-CV-1777, 2012 WL 6625879, at *1 (E.D.N.Y. Dec. 19, 2012) ("In considering such a motion, the Court must determine whether the amount of the settlement is fair, whether the distribution of the settlement proceeds will protect the interests of each plaintiff, and whether the attorneys' fees and costs sought are reasonable."). "A strong presumption exists that a settlement is fair and reasonable where '(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently. . . .'" *Allen*, 2009 WL 2951980, at *10 (alteration in original) (quoting *Stephen v. Target Corp.*, No. 08-CV-338, 2009 WL 367623, at *2 (E.D.N.Y. Feb. 12, 2009)); *see also Doe v. Mattingly*, No. 06-CV-5761, 2007 WL 2362888, at *4 (E.D.N.Y. Aug. 14, 2007) (same); *Lowell ex rel. Lowell v. Hall*, No. 05-CV-4978, 2007 WL 1434998, at *2 (E.D.N.Y. May 14, 2007) (same). In addition, courts in this district and in New York state[2] afford "a certain amount" of deference to the guardian's opinion that the settlement is fair.[3] *Lowell ex rel. Lowell*, 2007 WL 1434998, at *2; *see also S.W.*, 2012 WL 6625879, at *1 (discussing parental

---

[2] Under Local Rule 83.2(a)(1), "[t]he proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the Court, for cause shown, may dispense with any New York State requirement."

[3] "Other relevant factors in considering a proposed settlement include: (1) the complexity, expense, and likely duration of the litigation; (2) the extent to which discovery has been completed; (3) the risks of litigation with respect to both liability and damages; (4) the defendants' ability to withstand a greater judgment; and[] (5) the reasonableness of the proposed settlement amount compared to the best possible recovery and in light of all the litigation risks." *Allen v. Robert's Am. Gourmet Food, Inc.*, No. 07-CV-2661, 2009 WL 2951980, at *10 (E.D.N.Y. Sept. 8, 2009) (internal quotation marks omitted) (quoting *Jurdine ex rel. Jurdine v. City of New York*, No. 07-CV-2915, 2008 WL 974650, at *3 (E.D.N.Y. Apr. 8, 2008)).

deference); *Stephen*, 2009 WL 367623, at *3 (same); *Stahl v. Rhee*, 643 N.Y.S.2d 148, 153 (App. Div. 1996) (same).

### ii. Magistrate Judge Brown's Report & Recommendation

Magistrate Judge Brown found that Plaintiffs have satisfied the first two prongs — there was an arm's length negotiation and counsel was experienced. (Report & Recommendation 9.) However, Magistrate Judge Brown found that the parties failed to meet the third prong of the test because he could not find "that there has been sufficient discovery to enable counsel to act intelligently" and, instead, found that there had "been *no* meaningful discovery in the case." (*Id.* (emphasis in original) (internal quotation marks omitted).) Magistrate Judge Brown found that, on the whole, the settlement was not fair because $4,000 was a "modest, if not trifling, sum" and the retainer paid by Plaintiff was "*two and one half times* the proposed settlement." (*Id.* (emphasis in original).) He compared the settlement offer with similar cases and found $4,000 to be "dramatically different from other infant compromises that have been approved." (*Id.*) Magistrate Judge Brown also found that such a low sum was not warranted where "[t]here is no evidence of record to suggest that plaintiffs' claims lack substance; [and] indeed the only evidence of record — such as [C.T.C.'s] 50(h) testimony — fully supports [Plaintiffs'] contentions." (*Id.* at 10.) At the infant compromise hearing, Mrs. Camac testified that she still maintained the accuracy of the facts of the case as pled in the Complaint. (*Id.*; Infant Compromise Tr. 22:8–24:11.) Magistrate Judge Brown found that the sole reason Plaintiffs had agreed to accept the settlement was that they could no longer pay their litigation costs.[4] (Report & Recommendation at 11–12.) He recognized that while the parents' view that the settlement

---

[4] Magistrate Judge Brown noted that litigation costs were only one factor to consider and arrangements could be made so that Plaintiffs could continue to pursue the case — their counsel might not be granted the right to withdraw, other counsel might take the case on a contingent basis, or pro bono counsel might be appointed. (Report & Recommendation at 11–12.)

was fair deserved deference, "that deference should be neither blind nor absolute, because the settlement of the minor child's rights requires an assessment of the economic value of settlement for the child." (*Id.* at 12 (citing *Neilson*, 1999 F.3d at 654).)

### iii. Defendants' Objections to the Report and Recommendation

In their objections to the Report and Recommendation, Defendants argue that Plaintiffs chose not to conduct discovery. (Def. Obj. Mem. 3–4.) They argue that Plaintiffs were present for all the key events at the hospital and the school, and, thus, the Court should not assume that Plaintiffs are not informed simply because very limited discovery has occurred. (*Id.*) Defendants further allege that based on the facts, as Defendants understand them, Plaintiffs have no case and Defendants have a high likelihood of success on a summary judgment motion. (*Id.* at 3–6.) In support of their objections, Defendants rely on documents that they allege contain "several admissions from [C.T.C.] which unequivocally support Defendants' version of events," i.e., that C.T.C. did in fact threaten to commit suicide. (*Id.* at 4–5.) They also note that Plaintiffs' counsel has "expertise in civil rights claims" and that Mrs. Camac testified at the infant compromise hearing that she was comfortable with the settlement. (*Id.* at 5–6.) Defendants argue that all relevant facts are already known and further discovery would not provide any new information but only help Defendants assess Plaintiffs' credibility. (*Id.* at 6–7.) Defendants also argue that forcing them to litigate a case that they believe is "meritless" would be unfair. (*Id.*)

### iv. The Infant Compromise Is Not Fair, Reasonable or Adequate

The Court has reviewed the record and the applicable law and agrees with Magistrate Judge Brown's assessment that the settlement agreement is not fair, reasonable or adequate. The Court reiterates that its primary responsibility is to ensure that the settlement is fair, reasonable

6

and adequate *for the infant*. *See Neilson*, 199 F.3d at 654; *Allen*, 2009 WL 2951980, at *9; *Anderson*, 1997 WL 1179955, at *8. While the fact that the parents support the proposed settlement is one factor that the Court may consider, that factor, by itself, is not dispositive. In fact, where the interest of an infant is not properly represented by the parent, the law allows the Court to appoint a guardian *ad litem* to properly represent the infant's interests. *See, e.g.*, *Picerni v. Bilingual Seit & Preschool Inc.*, No. 12-CV-4938, 2013 WL 646649, at *8 (E.D.N.Y. Feb. 22, 2013) (noting that a court dissatisfied with an infant compromise "can always appoint a guardian *ad litem*"); *Jacobs v. United States*, No. 08-CV-8061, 2012 WL 591398, at *1 (S.D.N.Y. Feb. 22, 2012) (finding that the mother had failed to adequately protect the infant's best interest and that the infant compromise was inadequate and, thus, appointing a guardian *ad litem*); *see also Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227–28 (2d Cir. 2009) (upholding the district court's denial of attorneys' fees, where a guardian *ad litem* had to be appointed because counsel's representation during the infant compromise was so poor). Mrs. Camac testified that Plaintiffs were accepting the settlement because of the family's financial difficulties and not because it was in the best interest of C.T.C. (Infant Compromise Tr. 22:8–24:11.) While at this stage it does not appear that a guardian *ad litem* is necessary, the Court is well within its rights to reject the settlement agreement over the parents' approval.

  As for Defendants' claim that they are likely to succeed on the merits, the Court agrees with Magistrate Judge Brown that, at this stage, it is too early to determine the merits of the case. Defendants submitted medical records to show that Plaintiff attempted suicide in 2007 and was depressed in 2009. (Infant Compromise Tr. 10:15–17.) These records are not dispositive of the central issue in the case, which is whether on September 3, 2008, C.T.C. threatened to commit suicide, warranting his admission and 14 day stay in NUMC. *Camac*, 2012 WL 3277228, at *1–

4. C.T.C.'s testimony at the Rule 50(h) hearing is consistent with the Complaint. C.T.C. testified that he never told Defendants that he wanted to commit suicide. (50(h) Tr. 26:22–27:14, 33:24–34:8.) Defendants have submitted a document that appears to contain excerpts from C.T.C.'s records from NUMC. The Court cannot determine what weight, if any, this document should be given or what, if any, portions of this document would be admissible at a trial.[5] In view of the fact that four of Plaintiffs' claims survived Defendants' motion to dismiss, there is no basis for this Court to accept Defendants' argument that there is no merit to these claims, especially where the parties have only engaged in limited discovery.

In addition to agreeing with the areas of concern highlighted in Magistrate Judge Brown's Report and Recommendation, the Court notes that the parties have not determined the actual disbursement of the settlement. (Infant Compromise Tr. 21:22–22:2.) It is possible that

---

[5] There are many problems with the document submitted by Defendants. First, the document is incomplete. The last sentence of the last page states: "family, as per ER staff, had to be removed from the ER by security office because Continued →." (Def. Obj. Mem. Ex. B at 4.) If the family had to be removed from the ER because they were objecting to C.T.C. being admitted, that would be relevant and important information. Second, the document contains many unattributed statements. For example, the same page of the document states that "[s]he alleged that Mrs. Camac had stated in the meeting that her son wanted to kill himself. . . ." (*Id.*) There is no indication in the document as to who allegedly made the statement. Third, Defendants rely on various statements in the document, allegedly made by C.T.C., including a statement that suggests he was taken to NUMC because his parents had told school officials that C.T.C. had threatened to commit suicide, and not, as currently asserted in the Complaint, that C.T.C. never told anyone at the school on that day that he wanted to commit suicide and the school officials fabricated the suicide threat. (Def. Obj. Mem. 4–5.) However, C.T.C. testified that, on the day he was taken to NUMC, he spoke to Defendants Goropeuscheck and Darkeh and then was taken by the police and the paramedics to the hospital; his parents did not ride with him in the ambulance; and he did not learn of what occurred between Defendants and his parents until later. (50(h) Tr. 22:9–26:12; 33:24–34:8.) Thus, it is unclear whether the statements allegedly made by C.T.C. at the time he was admitted to NUMC, about what occurred in the office between his parents and Defendants, when C.T.C. was not present in the office, have any probative value.

8

all of the $4,000 could go to C.T.C.'s parents or to C.T.C.'s parents and counsel.[6] Courts have rejected infant compromises for similar ambiguities. *See Jacobs v. United States*, No. 08-CV-8061, 2012 WL 591395, at *8 (S.D.N.Y. Feb. 22, 2012) (rejecting a proposed infant compromise because it was filled with "inconsistencies and ambiguities" that were "not in the best interest of" the infant); *Tsotesi v. Bd. of Educ. of N.Y.C.*, No. 02-CV-7809, 2003 WL 22006936, at *1 (S.D.N.Y. Aug. 25, 2003) (rejecting the proposed infant compromise where it was unclear whether the infant was included in the settlement and, if so, how much the infant would be awarded and finding the attorneys' fees excessive); *Peterfreund ex rel. Peterfreund v. Ogunleye*, No. 93-CV-4550, 1999 WL 65997, at *5 (E.D.N.Y. Feb. 10, 1999) (adopting the magistrate judge's report recommending rejection of infant compromise and appointment of a guardian *ad litem* because it was unclear whether the proposed settlement would only benefit the parents and not the infant); *see also Labin v. Mattingly*, No. 08-CV-8971, 2010 WL 2346602, at *2 (S.D.N.Y. June 3, 2010) (rejecting an infant compromise where the funds would be distributed to the parents and "an undisclosed" amount to the attorneys); *Morales v. Abdelhadi*, No. 98-CV-1077, 1999 WL 350873, at * (S.D.N.Y. June 1, 1999) (rejecting an infant settlement where all the funds were allocated to the parent). This Court cannot conclude that $4,000 is fair,

---

[6] It is unclear in the record whether Plaintiffs' counsel will seek any reimbursement from the settlement. (Infant Compromise Tr. 14:13–24, 19:6–20:5.) Counsel should note that any attorneys' fees from the settlement must be approved by the Court. *Sanchez v. MTV Networks*, No. 10-CV-7854, 2012 WL 2094047, at *1 (S.D.N.Y. June 11, 2012); *Doe v. Mattingly*, No. 06-CV-5761, 2007 WL 2362888, at *4 (E.D.N.Y. Aug. 14, 2007); *D.F. ex rel. Z.C. v. Mt. Sinai-Nyu Med. Ctr. Health Sys.*, No. 04-CV-1507, 2006 WL 2023136, at *7 (E.D.N.Y. July 19, 2006) *aff'd sub nom. Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218 (2d Cir. 2009).

reasonable and adequate, given the seriousness of the claims, lack of discovery, and the ambiguity about the distribution of the sum.[7] The Court rejects the infant compromise.

## II. Conclusion

Having considered Magistrate Judge Brown's Report & Recommendation and the accompanying objections, the Court adopts the Report & Recommendation in its entirety and the parties' request to have the infant compromise approved is denied.

SO ORDERED.

                        s/MKB
                      MARGO K. BRODIE
                      United States District Judge

Dated: March 13, 2013
        Brooklyn, New York

---

[7] The Court notes that similar cases have settled for significantly more money. *See, e.g.*, *C.A. ex rel. Arroyo v. City of New York*, No. 11-CV-3831, 2013 WL 764626, at *1–3 (E.D.N.Y. Feb. 28, 2013) (approving an infant compromise of $16,000 total where the plaintiff alleged that "defendants violated her constitutional rights when defendants forcibly restrained and arrested plaintiff after an incident at her middle school"); *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5431034, at *9–10 (S.D.N.Y. Oct. 16, 2012) *report and recommendation adopted sub nom. Roberts v. City of New York*, No. 11-CV-5458, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (approving a total infant compromise of $12,500 for an infant who was arrested at an apartment where drugs were found but who was not ultimately prosecuted); *Johnson v. City of New York*, No. 08-CV-3673, 2011 WL 613373, at *1 (E.D.N.Y. Feb. 11, 2011) (approving an infant compromise where the plaintiffs were given $20,000 for an unreasonable search claim pursuant to § 1983); *Doe v. Mattingly*, No. 06-CV-5761, 2007 WL 2362888, at *1 (E.D.N.Y. Aug. 14, 2007) (approving a total sum of $55,000 in a § 1983 case where it was alleged that there were unreasonable searches of the home and the infant).